STATE OF CONNECTICUT *v.* PATRICK MANLUCCIA
(2692)

DANNEHY, C.P.J., DUPONT, and BORDEN, Js.

Argued April 5—decision released July 24, 1984

*Margaret Hayman,* assistant public defender, for the appellant (defendant).

*James G. Clark,* special deputy assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan,* state's attorney, and *Brian E. Cotter,* assistant state's attorney, for the appellee (state).

BORDEN, J. The defendant was convicted on two counts of risk of injury to a minor in violation of General Statutes § 53-21, and on one count of attempting to commit sexual assault in the third degree in violation of General Statutes §§ 53a-49 and 53a-72a (a) (1). He appeals.[1] We find no error.

The jury could reasonably have found the following facts. In the summer of 1979, the victim, a thirteen year old boy, was introduced to the defendant by Arthur Parent, who was a neighbor of the victim in Danbury. On July 4, 1979, the defendant and Parent took the victim to an amusement park. They then went to the defendant's apartment in Danbury where the victim saw several photographs, some of which were of nude males. The defendant offered him fifty dollars to pose for nude photographs. The victim agreed and the defendant took several frontal nude photographs of him. The defendant told the victim he was going to sell the photographs to someone in California. He packaged them and mailed them in the victim's presence as he took the victim home. Parent arranged another session at some time between July 4, 1979, and July 26, 1979, at which the defendant took more nude photographs of the victim. In some of these photographs the victim had an erection induced by viewing another magazine, shown to him by the defendant, with pictures in it of nude women. On July 26, 1979, the defendant and Parent took the victim to New York City. On the way back to Danbury, the defendant told the victim that he had sold the pictures of the victim to someone in Cali-

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

fornia, and made sexually suggestive remarks to the victim. The defendant and Parent took the victim to the defendant's apartment in Danbury where they attempted to assault him sexually. The victim ran away.

The defendant's arguments on appeal are concerned solely with the admission into evidence of two magazines, eight envelopes accompanied by four letters and sixteen Polaroid photographs accompanied by a photostat of a photograph. All these materials were seized from the defendant's apartment pursuant to a search warrant. We discuss each group of items separately.

## I

The two magazines, entitled "Special Boys" and "Horny Teens," consist of photographs of nude teenage boys in various states of sexual activity and arousal. Both purported to be publications of K & J Collectors, located at 152 West 42nd Street, New York City. Both contained requests for their readers to send in, for payment, photographs of teenage boys. The state offered and the court admitted the magazines for the limited purpose of showing the defendant's motive for photographing the victim; namely, to respond to the solicitations contained in the magazines. The court gave appropriate limiting instructions to the jury. The defendant argues that the magazines were irrelevant and that, in any event, the court abused its discretion because their prejudicial impact outweighed their probative value. We disagree.

The relevance of the magazines to show the defendant's motive is obvious and requires no more discussion than to point out that they "render[ed] the existence of a material fact in the case more certain or more probable than it would have been without the evidence." *State* v. *Ward,* 172 Conn. 163, 168, 374 A.2d 168 (1976). The fact that the victim testified that the defendant told him that he would sell the photographs to someone

in California did not, as the defendant claims, vitiate the relevance of these publications, which purportedly came from New York City. Neither the state nor the jury were bound to accept as gospel that statement of intended location of sale by the defendant.

Nor was there any abuse of discretion by the court in weighing the probative value of the magazines against their prejudicial impact. There is little doubt that, because of their nature, they would tend to have some prejudicial effect on the jury's perception of the defendant. By the same token, however, they were highly probative of a central fact in the case; namely, that the defendant did take the nude photographs of the victim, some of them showing him in a state of sexual arousal. Moreover, there was no suggestion by the state that possession of these publications constituted a crime. Finally, the record indicates that these magazines were two of a group of sixty-three similar publications seized from the defendant's apartment; and that the court excluded the other sixty-one. Thus, the court scrupulously exercised its "judicial discretion, to decide whether the probative value of the [evidence] outweighed the prejudice likely to result from its admission." *State* v. *Briggs,* 179 Conn. 328, 333, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 62 L. Ed. 2d 862 (1980).

## II

The envelopes and letters consisted of the following. There were four large magazine-size envelopes addressed to the defendant, each indicating the sender to be "M.V." of the same New York City street address as that of K & J Collectors, the publisher of the magazines. These envelopes were postmarked May 5, 1978, May 30, 1978, October 30, 1978, and March 9, 1979. Three of them contained handwritten notes on printed stationery indicating "Memo from the Desk of K & J

Collectors," signed by "M.V.," generally thanking the defendant for his mail order and indicating that his magazine order was enclosed. There also were four empty letter-size envelopes addressed to the defendant from "M.V." at the same address, and postmarked April 25, 1978, October 16, 1978, February 6, 1979, and May 22, 1979. Finally, there was a letter signed by "M.V." at the same address, which was partially printed and partially handwritten. The printed portion indicated that certain of "[t]he following K & J/M.V. Magazines are no longer available" and that a refund or alternate could be selected. The handwritten portion elaborated somewhat on the offer of a refund or alternate selection, and indicated "thanks for the photo."

These items were, like the magazines, offered and admitted for the purpose of showing the defendant's motive, and the court gave limiting instructions to the jury. The defendant's first attack on the admissibility of these items tracks his argument with regard to the magazines. He claims that they are irrelevant and, if relevant, that they are unduly prejudicial. We disagree.

Like the magazines, the relevance of these items lies in the light they shed on the defendant's motive. The identity of the addresses, the linkage which they indicate between "M.V." and K & J Collectors, and the dates of the postmarks, all of which are within fifteen months of the defendant's encounter with the victim, corroborated the evidence, supplied by the magazines and their contents, of the defendant's motive. Unlike the magazines, moreover, these items contain nothing in and of themselves which was likely to be inflammatory or repulsive to the jury. Any prejudice of such a nature would only arise by reference of these materials to the magazines; but such a reference would do no more than highlight the highly probative value of the

items. Cf. *State* v. *Onofrio,* 179 Conn. 23, 28–33, 425 A.2d 560 (1979). The court did not abuse its discretion in admitting the envelopes and letters.

The defendant also argues that these items were inadmissible as hearsay. Recognizing that they were offered and admitted for the sole purpose, not of establishing the truth of their contents, but for the purpose of showing the defendant's motive, and were thus not hearsay; see *State* v. *Stepney,* 191 Conn. 233, 249, 464 A.2d 758 (1983) (United States Supreme Court appeal pending); the defendant argues that nonetheless they constitute what he characterizes as nonassertive hearsay conduct of M.V. The defendant relies on an English case; *Wright* v. *Doe,* 132 Eng. Rep. 877 (1838), affirming 112 Eng. Rep. 488 (1837); and *Hine, Appeal from Probate,* 68 Conn. 551, 37 A. 384 (1897), which is apparently the only Connecticut case involving the doctrine of nonassertive hearsay conduct and which has been largely ignored since. See also McCormick, Evidence (2d Ed.) § 250 (criticizing the doctrine); Fed. R. Evid. 801 (a) and 801 (c) (nonverbal conduct is a statement, for hearsay purposes, only if it is intended as an assertion). We find it unnecessary to rule on this somewhat esoteric claim, because it is clear that the defendant did not make it with sufficient clarity in the trial court.

The defendant had filed a written motion in limine to exclude from evidence all the items seized from his apartment. This motion did not mention hearsay as a ground. At the mid-trial hearing on the motion, he conceded that they were not hearsay because they were offered to show the defendant's motive by showing what he acted on; but he objected on the grounds of relevancy and undue prejudice. After the court had ruled in response to the motion in limine, the state began its formal introduction of those seized materials which the court had ruled admissible. The first items offered were the two magazines. The defendant's coun-

sel, referring to the hearing on the motion in limine, said: "We, of course, had some discussion on this outside the presence of the jury last week and the state put forth at that time that the purpose was to establish motive and state of mind. For that purpose I indicated that I had no objection to that." He went on to repeat his earlier ground of relevancy. The next group of items offered by the state consisted of the envelopes and letters. The defendant's counsel stated: "I would object for the same reason that it is hearsay material for the same reason." Thus, after a written motion in limine, a hearing and an immediately preceding offer of related evidence, in all of which the defendant disclaimed reliance on hearsay as a basis of objection, the defendant's sole use of the word "hearsay," coupled with the phrase, "for the same reason," used twice, was insufficient to alert the trial court that he intended to invoke the doctrine he now asks us to apply. We decline to do so. *State* v. *Braman,* 191 Conn. 670, 684–85, 469 A.2d 760 (1983).

## III

The third category of items admitted into evidence about which the defendant complains consists of sixteen Polaroid photographs and one photostat of a photograph. The sixteen photographs appear to be taken of images on a television screen. Two of the photographs are of nude boys in a shower, showing either their buttocks or their bodies above the waists; six are of faces of young boys; one is of several young men who appear to be in a kind of military lineup dressed in undershorts; three appear to be of young children in underwear; one appears to be of a young boy dressed in a shirt and shorts; and three are so unclear as to be unintelligible to the eye. Some of the pictures bear handwritten legends on them indicating names of television shows or movies, such as "Mackenzies of Paradise Cove," "Pom Pom Girls," "Partridge Family" and

"Bad News Bears Breaking Training." The photostat of a photograph is in two parts on a single sheet of paper: the top half shows a woman dressed as a nurse and a line of young children; the bottom half shows the same woman, and a man dressed in a business suit.

These items came into evidence, not as part of the state's case, but solely to impeach a witness for the defendant, his brother Frank Manluccia, Jr. Frank Manluccia, who lived in the second floor apartment beneath the defendant's apartment on the third floor and who previously had occupied the third floor apartment, testified on direct examination that he had a key to the defendant's apartment; that he often entered the defendant's apartment in the defendant's absence because he stored some of his clothes there; that he visited the apartment twenty-five times per month; that he had seen Polaroid photographs there, some of which he identified in his testimony; that he did not see pictures of naked boys there; and that he would have noticed pictures of naked boys there. In rebuttal, the state offered the items at issue here through the Danbury police officer who had executed the search warrant, and who testified that he found them on top of a desk in the defendant's apartment. The defendant objected. The state claimed the items on the basis of credibility. The court admitted them for that limited purpose and so instructed the jury. The defendant excepted to the court's ruling.

On appeal, the defendant argues that admission of the photographs was error because they were not inconsistent with Frank Manluccia's testimony; because they constituted an attempt, by the use of extrinsic evidence, to impeach him as to a collateral matter; and because their prejudicial impact outweighed their probative value. This argument is without merit.

We note, first, that the defendant has not properly presented this claim because nowhere in his brief does he state the ground of his objection. See Practice Book § 3060F (c) (3); *Enterprise Leasing Corporation* v. *Dixon,* 1 Conn. App. 496, 501, 472 A.2d 1300 (1984). In fairness to him, however, we have examined the transcript, which discloses that the sole basis of his objection was relevancy.[2]

"Our rules of practice make it clear that when an objection to evidence is made, a succinct statement of the grounds forming the basis for the objection must be made in such form as counsel desires it to be preserved and included in the record. Practice Book § 288. 'This court reviews rulings solely on the ground on which the party's objection is based.' *State* v. *Manning,* 162 Conn. 112, 118, 291 A.2d 750 (1971). In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. *State* v. *Addazio,* 169 Conn. 416, 427, 363 A.2d 153 (1975); *State* v. *Manning,* supra, 118–19; *State* v. *Gelinas,* 160 Conn. 366, 369, 279 A.2d 552 (1971); *Casalo* v. *Claro,* 147 Conn. 625, 628–29, 165 A.2d 153 (1960). The purpose of such a requirement is apparent since we have consistently stated that we will 'not consider . . . evidentiary rulings . . . where no claim of error was preserved for review on appeal by proper objection and exception.' *State* v. *Hoffler,* 174 Conn. 452, 461, 389 A.2d 1257 (1978). Moreover, once the authority and ground for an objection is stated, our review of the trial court's ruling is limited to the ground asserted. *State* v. *Brice,* 186 Conn. 449, 457, 442 A.2d

---

[2] The defendant's counsel stated: "Objection, your Honor. I don't see the relevancy of this."

906 (1982); *State* v. *Manning,* supra, 118; see Practice Book § 3063." *State* v. *Braman,* 191 Conn. 670, 684–85, 469 A.2d 760 (1983).

"[I]t is quite clear that neither the trial court nor the prosecution was alerted to or interpreted [the defendant's] objection to be based upon anything but relevancy, nor could they reasonably have been expected to do so. Thus, to review the defendant's claim, which has been articulated for the first time on appeal and not before the trial court, would result in a ' " 'trial by ambuscade of the trial judge.' " ' *State* v. *Brice,* supra, quoting *State* v. *DeGennaro,* 147 Conn. 296, 304, 160 A.2d 480, cert. denied, 364 U.S. 873, 81 S. Ct. 116, 5 L. Ed. 2d 95 (1960). We therefore do not address the merits of [this] claim of error." *State* v. *Braman,* supra, 685. Furthermore, assuming arguendo that a claim of irrelevancy invokes by implication a claim that the probative value of evidence is outweighed by its prejudicial impact, we conclude that the court did not abuse its discretion in admitting these materials.

There is no error.

In this opinion the other judges concurred.