STATE OF CONNECTICUT *v.* JASON A. GORISS
(AC 26963)

Bishop, DiPentima and Mihalakos, Js.

Argued November 26, 2007—officially released June 10, 2008

*Mary Boehlert*, special public defender, for the appellant (defendant).

*Nancy L. Chupak*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Mary Elizabeth Baran*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Jason A. Goriss, appeals from the judgment of conviction, rendered after a jury trial, of risk of injury to a child in violation of

General Statutes § 53-21 (a) (2).[1] He was acquitted of the charge of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2).[2] On appeal, the defendant claims that the trial court (1) improperly denied his motion for a judgment of acquittal notwithstanding the verdict and (2) improperly denied his motion to allow him to testify as a surrebuttal witness. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On one evening in January, 2004, the victim, T,[3] who was nine years old at the time, was in the apartment of her half-sister, D. Also present in the apartment were D's husband, who is the defendant in this case, and D's two younger children. After watching a scary movie, T had fallen asleep on the couch. Upon awakening, she went into the kitchen, where the defendant was sitting at the computer. She told the defendant she was scared, and he asked her if she wanted to lie down on the sofa with him. While they were lying down on the couch, the defendant started to tickle her and then placed his hand down her pajama bottoms and touched her vagina. T did not tell anyone about the incident for several months because she did not want to go to court and testify.

---

[1] General Statutes § 53-21 (a) provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony . . . ."

[2] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[3] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Sometime in April, 2004, T told her eleven year old sister that the defendant had touched her inappropriately, whereupon the eleven year old sister called D and told her what had happened. D then called T's father and also notified the department of children and families (department). The department, in turn, notified the Wallingford police department.

T was examined by Janet Murphy, a nurse practitioner at the Yale-New Haven Hospital child sexual abuse evaluation clinic. When Murphy asked T about where the defendant had touched her, T replied that the defendant had put his finger more inside of her than on the outside of her vagina.

I

The defendant first claims on appeal that the court improperly denied his motion for a judgment of acquittal notwithstanding the verdict because the jury's conclusion was not reasonably and logically reached. Specifically, the defendant contends that in light of the testimony and evidence presented at trial, the guilty verdict on the risk of injury charge was illogical given the not guilty verdict on the charge of sexual assault in the first degree. He contends that digital penetration constitutes sexual intercourse and that because the jury found him not guilty on the charge requiring intercourse, it had to find that there was no digital penetration. Because there was no digital penetration of a child younger than age sixteen, a conviction could not be had under § 53-21 (a) (2). We do not agree.

It is well recognized that in criminal trials before a jury, "[t]he general rule to which we subscribe is that factual [c]onsistency in the verdict is not necessary. Each count in an indictment is regarded as if it [were] a separate indictment." (Internal quotation marks omitted.) *State* v. *Hinton*, 227 Conn. 301, 313, 630 A.2d 593 (1993). "[A] factually inconsistent verdict will not be

overturned on appeal. On several occasions, this court has refused to reverse a verdict of guilty on one count where that verdict appeared to be inconsistent with a verdict of acquittal on another count. . . . The law permits inconsistent verdicts because of the recognition that jury deliberations necessarily involve negotiation and compromise. . . . [I]nconsistency of the verdicts is immaterial. . . . As Justice Holmes long ago observed in the case of *Dunn* v. *United States*, 284 U.S. 390, 393–94, 52 S. Ct. 189, 76 L. Ed. 356 (1932): The most that can be said in such cases . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity. . . . That the verdict may have been the result of compromise, or a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters." (Internal quotation marks omitted.) *State* v. *DeCaro*, 252 Conn. 229, 242–43, 745 A.2d 800 (2000).

The defendant does not appear to claim that the guilty verdict of the jury should be vacated because it was factually inconsistent with its not guilty verdict. Rather, the defendant claims that the jury's verdict, finding him guilty of risk of injury to a child, *logically* cannot be reconciled with the verdict finding him not guilty of sexual assault in the first degree. "While an inconsistent verdict is not objectionable in itself, its inconsistency may be considered insofar as it supports a claim that the jury's conclusion was not reasonably and logically reached." *State* v. *Manning*, 162 Conn. 112, 123, 291 A.2d 750 (1971); see *State* v. *DeCaro*, supra, 252 Conn. 243. "The resolution of a claim of inconsistent verdicts presents a question of law. . . . Our review is therefore

plenary." (Citation omitted.) *State* v. *Flowers*, 85 Conn. App. 681, 694, 858 A.2d 827 (2004), rev'd on other grounds, 278 Conn. 533, 898 A.2d 789 (2006).

The defendant contends that "the effect of the not guilty verdict on the sexual assault in the first degree [charge] logically means the jury found that no molestation occurred. As there [was] no evidence that a sexual touching took place apart from, either before or after, the alleged digital penetration, it is impossible to reasonably or logically find a digital touching but no digital penetration." The defendant's argument lacks a legal and factual basis.

Sexual assault in the first degree under § 53a-70 (a) (2) requires that sexual intercourse occur. Sexual intercourse is defined in General Statutes § 53a-65 (2) and requires penetration of the victim's vagina.[4] Unlike the penetration required for sexual assault in the first degree, mere contact with the intimate parts of the victim is all that is required under § 53-21 (a) (2)—it does not require penetration at all. To reach its verdict, the jury needed to find that the defendant had contact with T's intimate parts. Furthermore, "[i]t is the jury's right to accept some, none or all of the evidence presented. . . . [The jury] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [jury] can . . . decide what— all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *State* v.

---

[4] General Statutes § 53a-65 (2) provides: " 'Sexual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Its meaning is limited to persons not married to each other. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body."

*Weisenberg,* 79 Conn. App. 657, 663–64, 830 A.2d 795, cert. denied, 266 Conn. 932, 837 A.2d 806 (2003).

Most of the testimony at trial centered around the issue of digital penetration. Murphy testified that during her physical examination of T, she placed her hands on the outside of T's genitalia and that T told her that the defendant had put his finger more inside than where her hands were. Murphy further testified that "it's hard to know exactly what inside to her meant, more inside than where my hands were, but my hands were on the very—my hands were on the verge of the inside. . . . All I know is she meant more inside than where my hands were and . . . the next step would have been inside because [my hands] were on the outside." The testimony of Murphy could have raised a reasonable doubt in the minds of the jurors as to whether digital penetration had in fact occurred, thereby leading to the defendant's acquittal on the charge of sexual assault in the first degree.

Although Murphy's testimony could have created reasonable doubt regarding penetration, her testimony also permitted the jury reasonably to conclude that the defendant touched T's vagina regardless of whether penetration was achieved. As noted, the jury, as the sole finder of fact, is free to believe all, none or some of a witness' testimony. On this basis, the jury's verdict was not illogical.

Furthermore, the jury's verdict could have been based on compromise. See *State* v. *DeCaro,* supra, 252 Conn. 242–43 ("[t]he law permits inconsistent verdicts because of the recognition that jury deliberations necessarily involve negotiation and compromise" [internal quotation marks omitted]). The jury's guilty verdict on one charge and not guilty verdict on another can be interpreted as an act of leniency toward the defendant in regard to the not guilty verdict. We, however, are

not permitted to speculate as to why the jury reached its verdict. The jury had before it facts from which to find that the prohibited contact had occurred. Accordingly, the court correctly denied the defendant's motion for a judgment of acquittal notwithstanding the verdict.

## II

The second and final claim by the defendant is that the court abused its discretion when it denied his motion to permit him to testify as a surrebuttal witness. Specifically, the defendant claims that he should have been permitted to rebut the rebuttal testimony of Detective Linda LoPresto. We are not persuaded.

The following additional facts are pertinent to the defendant's claim. The state, as part of its case-in-chief, presented LoPresto as one of its witnesses. She testified that she had interviewed the defendant on April 24, 2004. No further testimony was elicited from LoPresto regarding the substance of the interview. After the state had rested its case, the defendant testified on direct examination that he had never had sexual relations with T. On cross-examination, he was asked if he had told LoPresto that he had laid on the sofa with T, rubbed her back and may have mistakenly touched her private area. He denied ever making such a statement.[5]

On rebuttal, the state again called LoPresto, who testified that when she interviewed the defendant, he

---

[5] The prosecutor asked the defendant: "Isn't it true, sir, yes or no, that on April 23 of the year 2004 that you said to Detective Linda LoPresto the following: 'You do remember an evening when [T] slept over and she was on the couch, that she woke up scared and that you did comfort her, and then you said that you lied down on the couch with her and you had [T] lie on your stomach, and that you also told Detective LoPresto that you rubbed her back and that [T] might have misconstrued your affection and that you also told the detective that you might have mistakenly touched her private part when you picked her up.' Do you remember, sir, under oath today in this courtroom telling that to Detective Linda LoPresto . . . yes or no?" The defendant responded: "No."

had in fact told her that he laid down on the sofa with the victim and may have touched her private area by mistake.

The defendant thereafter moved for permission to testify as a surrebuttal witness in light of LoPresto's rebuttal testimony. The court, in denying the defendant's motion, stated that the defendant had the opportunity on redirect to give his version of what happened and failed to do so. Furthermore, the court reasoned, no new matter had been raised by the rebuttal witness.

Having reviewed the facts relevant to the defendant's claim, we now set forth our standard of review. "Rebuttal evidence is that which is offered to meet new matters raised in [a defendant's case], to contradict prior testimony and to impeach or rehabilitate witnesses . . . . Surrebuttal evidence is that which is offered to meet evidence raised in rebuttal. [O]nly evidence to explain away new facts brought forward by the proponent in rebuttal . . . is properly admissible [in surrebuttal]. . . . [Our Supreme Court previously has] stated that there is no constitutional right to present surrebuttal evidence. . . . The presentation of surrebuttal evidence is a matter resting squarely within the discretion of the trial court. . . . The defendant must demonstrate some compelling circumstance and the proffered evidence must be of such importance that its omission puts in doubt the achievement of a just result." (Internal quotation marks omitted.) *State* v. *Boykin*, 74 Conn. App. 679, 691–92, 813 A.2d 143, cert. denied, 263 Conn. 901, 819 A.2d 837 (2003).

In the present case, the record reflects that the prosecutor cross-examined the defendant about what he had said to LoPresto and, specifically, whether he had stated that he might have mistakenly touched T's private area when he picked T up. The defendant testified that he did not make such a statement to LoPresto. The defendant's

attorney had a full opportunity, during redirect examination, to clarify the defendant's prior testimony, if he so desired. No such clarification was sought on redirect. The state then called LoPresto as a rebuttal witness. LoPresto testified that the defendant did, in fact, make a statement that he had lain down on the sofa with the victim and may have touched T's private area by mistake. The court permitted the prosecutor to elicit LoPresto's rebuttal testimony to contradict, or to rebut, the defendant's testimony that he did not make such a statement to LoPresto. The defendant thereafter sought surrebuttal to rebut LoPresto's testimony.

Under the principles previously set forth, the defendant was permitted, by means of surrebuttal, only to explain away new facts set forth by the state in its rebuttal. His proffered evidence did not satisfy that standard; he did not seek to contradict or to rebut the statements made by LoPresto but, rather, to clarify his prior testimony in light of LoPresto's testimony. The defendant does not refer to anything in his proffered evidence that would have refuted the facts elicited by the state's rebuttal testimony. Instead, the defendant sought to testify as to what transpired during his interview with LoPresto, a topic that was well covered in his earlier testimony, and, apparently, to strengthen the credibility of that testimony.

"Bolstering of defense evidence is not permitted on surrebuttal." (Internal quotation marks omitted.) Id., 693. The proffered testimony would not have rebutted or refuted evidence elicited by the state on rebuttal. Instead, it appears that the defendant offered his testimony merely to rehabilitate or to clarify his prior testimony because he disagreed with LoPresto's testimony. Likewise, the defendant has not demonstrated that compelling circumstances existed for the admission of his proffered testimony or that the omission of such evidence casts doubt on the propriety of the jury's verdict.

For these reasons, we conclude that the court properly exercised its discretion when it declined to admit such testimony on surrebuttal.

The judgment is affirmed.

In this opinion the other judges concurred.